# In the District Court of the United States
## For The District of South Carolina
### BEAUFORT DIVISION

| | | |
|---|---|---|
| Eng Phomphackdi, # 305819 | ) | Civil Action No  9:05-3084-DCN-GCK |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF THE MAGISTRATE JUDGE** |
| Spartanburg County; Spartanburg County | ) | |
| Jail; Cpl. Heard Mercer; and | ) | |
| Spartanburg County Sheriff, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  INTRODUCTION

The Plaintiff, Eng Phomphackdi ("Plaintiff" or "Phomphackdi"), was a pre-trial detainee housed in the Spartanburg County Detention Facility ("SCDF") at the time of the alleged incidents giving rise to this action.[1]  Proceeding *pro se*, Plaintiff seeks relief from the above-captioned Defendants, Spartanburg County, the SCDF, Cpl. Heard Mercer, and the Spartanburg County Sheriff (collectively, the "Defendants").  Plaintiff alleges that on December 17, 2003, Cpl. Mercer, acting without provocation, grabbed his neck, choked him, and threw him to the floor, and then beat him about his head and face.  Plaintiff sustained a broken nose and facial cuts.  Plaintiff alleges he subsequently was punished by being imprisoned in a maximum security cell at the Jail for approximately eight months, until August 13, 2004.[2]  Plaintiff alleges the use of excessive

---

[1]     *See* Amendment to Complaint [7-1] at p. 1, ¶¶ 1-2.  In his pleadings, the Plaintiff refers to the SCDF as the "Spartanburg County Jail."   Plaintiff currently is incarcerated in the South Carolina Department of Correction's Evans Correctional Institution ("ECI").

[2]     *See* Complaint [1] at ¶ 1-2.

force in violation of 42 U.S.C. § 1983[3] and state tort claims of gross negligence (assault and battery) pursuant to the S.C. Tort Claims Act.[4]  He seeks compensatory and punitive damages.[5]

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civil Rules 73.02(B)(2)(d) and (e), D.S.C.  The Defendants have filed a motion for summary judgment.  [26]  As this is a dispositive motion, this Report and Recommendation is entered for review by the District Court.

## II.  *PRO SE* COMPLAINT

Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal construction. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*, 439 U.S. 970 (1978). Under established local procedure in this judicial district, a careful review has been made of the *pro se* complaint herein pursuant to the procedural provisions of  28 U.S.C. § 1915, 28 U.S.C. § 1915A, and the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, § 104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:  *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*,

---

[3]     42 U.S.C. § 1983 provides, in pertinent part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[4]     *See* Amendment to Complaint [7] at p. 1; *see also* Plaintiff's Memorandum Opposing Motion to Dismiss and Summary Judgment [33-1] at p. 1.

[5]     *See* Complaint [1] at ¶ 2-3.

64 F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

*Pro se* pleadings are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *and Cruz v. Beto*, 405 U.S. 319 (1972). When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2d Cir. 1975). Even under this less stringent standard, however, the *pro se* complaint nonetheless may be subject to summary dismissal. The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). Likewise, a court may not construct the plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986). The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Such is the case with the present complaint.

### III.  BACKGROUND AND PROCEDURAL HISTORY IN FEDERAL COURT

Plaintiff, who is Laotian, commenced this action on October 28, 2005[6] against the above-captioned defendants, alleging that on or about December 17, 2003, he was beaten in the face by

---

[6]     Plaintiff has the benefit of the holding in *Houston v. Lack,* 487 U.S. 266, 101 L.Ed.2d 245, 108 S.Ct. 2379 (1988) with respect to the "delivery" date of his Complaint.   *See* Order [4] at p. 1., n.1.

Cpl. Mercer after a misunderstanding due to language difficulties.  Plaintiff alleges that he had

been sitting in a chair watching television in the common area of Pod 3 of the SCDF when Cpl.

Mercer appeared in the area and turned the telvision screen away from Plaintiff.[7]  Cpl. Mercer

began shouting at Plaintiff; according to Plaintiff, "who does not speak English," he thought Cpl.

Mercer was telling him to go back to his cell.  Plaintiff put the chair back on the table (where the

chairs are stored) and began to go back to his cell, but Cpl. Mercer grabbed Plaintiff by the throat

and threw him to the floor.[8]  Cpl. Mercer started to choke him and beat Plaintiff in the face and

head, causing multiple and severe lacerations which resulted in profuse bleeding.[9]  Plaintiff

contends that Cpl. Mercer acted as he did because the Plaintiff is Laotian and does not have a

command of the English language.[10]  Furthermore, Plaintiff contends that Cpl. Mercer "had

previously made fun of me because of my foreign descent and language."[11]

      According to Plaintiff, the Shift Captain took pictures of his injuries, then took him to the

Jail's infirmary.  The nurse could not stop his facial bleeding, subsequently, Plaintiff was

transported to Spartanburg Regional Medical Center for emergency treatment.[12]  Plaitniff had x-

rays and an IV "for [a] blood expander . . . because plaintiff had lost so much blood."  Plaintiff

alleges that the x-rays showed broken bones in his nose and face.  He was returned to Spartanburg

County Jail, where the Spartanburg County Sheriff had the Plaintiff placed in solitary

confinement.  After his first five days in solitary confinement, Plaintiff was taken to a doctor who

---

[7]      *See* Plaintiff's Affidavit [32] at ¶¶ 4-5.

[8]      *See* Amendment to Complaint [7-1] at ¶ 2-3; *See* Plaintiff's Affidavit [32] at ¶¶ 7, 9.

[9]      *See* Complaint [1] at p. 3 and "To Whom It May Concern" letter attached thereto; *see also* Plaintiff's Affidavit [32] at ¶ 10.

[10]      *See* "To Whom It May Concern" letter at p. 1, attached to Complaint.  [1] According to this letter, Plaintiff went into the common area to read a newspaper.  In an affidavit subsequently filed with the court, Plaintiff stated he went in to the common room to watch television.  [32]

[11]      *See* Plaintiff's Affidavit [32] at ¶ 7.

[12]      *See* Complaint [1] at p. 2.

stated Plaintiff did not have any broken bones.  Plaintiff alleges the doctor was trying to cover up his injuries.[13]  Plaintiff alleges he was in solitary for almost eight (8) full months, without being charged with any type of disciplinary infraction or without the benefit of any hearing, in violation of his Fifth Amendment right to due process and his Sixth Amendment right to a trial after being charged.  Plaintiff also alleges he was cut off from all communication with his lawyer and the courts, in violation of his First Amendment right of access to the courts[14] and also cut off from contact with his family and his attorney.

After Plaintiff filed his Complaint, he filed an Amended Complaint and a Second Amendment to Complaint [7-1] (collectively, the "Amended Complaint"), which asserted gross negligence on the part of Defendants' employees,[15] and sought compensatory and punitive damages for Plaintiff's pain, suffering and permanent disfigurement resulting from Cpl. Mercer's actions.[16]  Plaintiff also set forth causes of action for supervisory liability against the Sheriff, and alleged he had been denied due process and equal protection while he was in solitary confinement, and that he had been discriminated against because of his Laotian ethnicity, national origin, and his inability to read, write, or comprehend the English language.[17]

On December 21, 2005, the undersigned ordered that the Defendants be served with the Amended Complaint.  [8-1]  On December 29, 2005, the Defendants filed an Answer [10-1] and on January 24, 2006 the Defendants filed Objections to the Amended Complaint, contending that neither of the amendments to the Complaint had been served upon Defendants prior to the service of Defendants' Answer.  [13-1]  On February 23, 2006, the undersigned denied the Defendants'

---

[13]    *See* Complaint [1-1] at p. 3.

[14]    *See* Complaint [1] at p. 4.

[15]    *See* Amendment to Complaint [7-1] at p. 4.

[16]    *See* Second Amendment to Complaint [7-2] at ¶ 1-2.

[17]    *See* Second Amendment to Complaint [7-2] at ¶ 1-4.

Objections, finding that Plaintiff had the right to amend his complaint prior to an answer being filed by the opposing parties, and holding it was clear that the Amended Complaint (served upon the Defendants on January 4, 2006) and Defendants' Answer (filed on December 29, 2005) had crossed in the mail.

The Defendants did not answer the Amended Complaint.  On April 5, 2006, they filed a Motion to Dismiss or in the Alternative for Summary Judgment ("Defendants' Motion"), along with a Memorandum of Law and various documents in support of the Motion.  [26-1--26-12; 28] On April 6, 2006, the undersigned issued an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of the summary dismissal procedure and the possible consequences if he failed to adequately respond to the Defendants' Motion within thirty-four (34) days.  [27-1]  After the Plaintiff failed to respond to the court's *Roseboro* Order, the court issued an Order allowing the Plaintiff an additional twenty (20) days to respond to Defendants' Motion. [29-1]  Plaintiff requested an extension of time in which to respond, and on May 17, 2006 filed a Memorandum Opposing Motion to Dismiss and Summary Judgment, attaching an affidavit and exhibits.  [33-1]  Also on May 17, Plaintiff filed a Motion to Permit Discovery and Stay Action [34] which was denied by the undersigned on May 18.  [35; 36]  On June 5, Plaintiff filed a Motion for Reconsideration of his Motion for Discovery and for a stay.  [37]  Plaintiff's Motion was granted by the undersigned, who ordered Plaintiff to supplement his response to the summary judgment motion within fifteen (15) days of receipt of the documents.  [38]

On July 6, 2006, the Defendants filed their Reply to Response to Plaintiff's Motion, along with numerous exhibits.  [43]  Thereafter, Plaintiff filed a motion for appointment of counsel, which was denied by the undersigned.  [44; 45]  On September 1, 2006, Plaintiff filed a motion requesting reconsideration of his motion for appointment of counsel, which was denied on September 5.  [46; 49]

On October 3, Plaintiff filed a motion to permit discovery.  [51]  The Defendants responded in opposition to the motion on October 23, and the motion was denied by an oral order

entered on October 24 on the grounds that Defendants had filed their Motion and Plaintiff had filed a Response in Opposition to the Defendants' Motion.  [52; 53]

### IV.  SUMMARY JUDGMENT STANDARD

As matters outside the pleadings have been presented by the Defendants and have not been excluded by this court, the motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) shall be treated as one for summary judgment pursuant to Rule 56. *See* Fed.R.Civ.P. 12(b)(6).

Rule 56 states, as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that:  (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts

exist which give rise to a genuine issue.  *Id*. at 324.  Under this standard, the existence of a mere

scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary

judgment motion.  *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials,

without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v.*

*Communications Satellite Corp.*, 759 F.2d 355, 365 (4ᵗʰ Cir. 1985), *overruled on other grounds*,

490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).  "Only disputes over facts that might

affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."

*Anderson*, 477 U.S. at 248.  When Rule 56(e) has shifted the burden of proof to the non-movant,

he must provide existence of every element essential to his action which he bears the burden of

adducing at a trial on the merits.

## V.  DISCUSSION

### A.  Whether Plaintiff Exhausted his Administrative Remedies Prior to Filing this Action

As a threshold matter, the Defendants, in their Answer, allege as an affirmative defense

that Plaintiff failed to exhaust his available administrative remedies.[18]  Plaintiff stated in his

---

[18]     *See* Answer [10-1] at ¶ 13.  The majority of the Circuits, including the Fourth Circuit, have held in the context of inmates' suits under Section 1983 that the failure to exhaust administrative remedies is an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure like the defense of statute of limitations.  *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 681 (4th Cir.2005) ("In our view, the language and structure of the PLRA make it clear that an inmate is not required to allege exhaustion of remedies in his Section 1983 prison-conditions complaint. Instead, an inmate's failure to exhaust his administrative remedies must be viewed as an affirmative defense that should be pleaded or otherwise raised by the defendant."); *Jackson v. District of Columbia*, 254 F.3d 262, 267 (D.C.Cir. 2001); *Casanova v. Dubois*, 304 F.3d 75, 77, fn. 3 (1st Cir. *2002*); *Snider v. Melindez*, 199 F.3d 108, 111-12 (2d Cir. 1999); *Jenkins v. Haubert,* 179 F.3d 19, (2d Cir. 1999); *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Wendell v. Asher*, 162 F.3d 887, 890 (5th Cir. 1998)(in dicta); *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); *Massey v. Helman*, 196 F.3d 727, 734-35 (7th Cir. 2000), *cert. denied*, 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *Foulk v. Charrier*, 262 F.3d 687, 697 (8th Cir. 2001); *cf. Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000), *cert. denied*, 531 U.S. 1040, 121 S.Ct. 634, 148 L.Ed.2d 542 (2000) (An inmate must "plead his claims with specificity and show that they have been exhausted by attaching a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.").

Complaint that the SCDF did not have a grievance procedure in place, but that he complained to the Shift Captain, who questioned him and completed a report.[19]

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust administrative remedies prior to filing a complaint, or dismissal is mandatory. *See, e.g., Charles v. Ozmint*, No. 2:05-2187-DCN-RSC, 2006 WL 1341267(D.S.C. May 15, 2006). 42 U.S.C.A. §1997e(a), which is part of the Prison Litigation Reform Act of 1996, <u>Pub.L. No. 104-34, 110 Stat. 1321-71</u> ("PLRA") states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

It is well established that the exhaustion requirement is mandatory, *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 674, 677 (4th Cir. 2005), and that the requirement "applies to all inmate suits about prison life," whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong. *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *see also Booth v. Churner*, 532 U.S. 731, 121 S.Ct. 1819, 1820, 149 L.Ed.2d 958 (2001) ("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including Section 1983. *Woodford v. Ngo*, 548 U.S. —, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

The Defendants stated in their Answer that Plaintiff failed to exhaust his administrative remedies.[20] In their Motion, however, the Defendants do not address whether or not Plaintiff

---

[19]     *See* Complaint. [1]

[20]     *See* Answer.

exhausted his administrative remedies.  A plaintiff's failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense which the defendants have the burden to plead and prove.  *Anderson*, 407 F.3d at 681.  In the present case, it appears that the Defendants have waived this affirmative defense, as they have not proven that Plaintiff failed to exhaust his administrative remedies prior to filing this action.  Thus, for purposes of preparing a Report and Recommendation for the District Judge, the undersigned will assume that Plaintiff has exhausted his Administrative remedies, and will turn to the merits of the action.

### B.  Whether Plaintiff Prepared his Complaint and Amended Complaint

Defendants contend that Plaintiff's Complaint should be dismissed because an inmate other than the Plaintiff prepared it.[21]  In pertinent part, the Defendants argue:

> Inmate William Crawford has made it clear in his filings on behalf of Mr. Phomphackdi that he is generating and producing all of the legal work in this case.  He even pleaded in the complaint that 'he is not even certain that Mr. Eng even understands what I am trying to do in his behalf.'  He further noted that 'any points of fact presented herein [in the complaint] that may later be found as not quite accurate such as time line of events, names of people involved or other discrepancies are directly attributable to me and not the Plaintiff.'[22]

In support of this argument, Defendants rely upon *Covington v. Allsbrook*, 636 F.2d 63, 64 (4th Cir.1980) (*per curiam*) which held that a non-lawyer inmate was not qualified to represent fellow inmates in a class action claim.[23]  The holding of this case, however, has been abrogated by *Becker v. Montgomery*, 532 U.S. 757, 121 S.Ct. 1801 (2001), which held that a notice of appeal which bore a typewritten name, but was not signed by the *pro se* appellant or by a qualified attorney, was not defective, and thus did not require dismissal.  *Becker*, 532 U.S. at 763; 121 S.Ct.

---

[21]     Although Defendants do not refer to it, 28 U.S.C. § 1654 provides:

> In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

[22]     *See* Defendants' Memorandum [26-2] at p. 6.

[23]     *See* Defendants' Memorandum [26-2] at p. 7.

at 1806.  In the present case, Plaintiff has signed his pleadings with his name, and thus the court will assume that Plaintiff's pleadings are properly before the court.

### C.  Plaintiff's Claim under Section 1983

To state a claim under Section 1983 , a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).  The Fourth Circuit Court of Appeals has held that excessive force claims of pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment.  *Carr v. Deeds,* 453 F.3d 593, 605 (4th Cir. 2006), *citing Riley v. Dorton*, 115 F.3d 1159, 1166 (4th Cir. 1997) (en banc).  Under that standard, the use of force violates the Due Process Clause if it is intended as punishment.  *United States v. Cobb*, 905 F.2d 784, 788-789 (4th Cir. 1990).  Punitive intent may be inferred when the application of the force was not reasonably related to a legitimate non-punitive objective.  Furthermore, under Fourth Circuit caselaw, this Court evaluates the extent of the alleged injuries under co-extensive Eighth Amendment standards.  *Grayson v. Peed*, 195 F.3d 692, 696-697 (4th Cir. 1999).

To succeed in an excessive force claim under the Due Process Clause, the plaintiff must first demonstrate "that Defendants 'inflicted unnecessary and wanton pain and suffering'" upon the detainee.  *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999), *quoting Whitley v. Albers*, 475 U.S. 312, 320, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).  The proper analysis under the Fourteenth Amendment is "whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Taylor,* 155 F.3d 479 at 483, *quoting Whitley v. Albers*, 475 U.S. at 320-21.  "Even if there is a genuine issue of material fact as to whether Defendants behaved maliciously or sadistically after the need for force has subsided," plaintiff must also demonstrate that the injuries were "more than *de minimis* " or that " 'the force used [is] of a sort repugnant to the conscience of mankind . . . or the pain itself [is] such that it can properly

be said to constitute more than *de minimis* injury.' " *Carr v. Deeds*, 453 F.3d at 605-606, *quoting Taylor v. McDuffie,* 155 F.3d at 483, *in turn quoting Norman v. Taylor*, 25 F.3d 1259, 1263 n. 4 (4th Cir.1994) (en banc).  Simply stated, the application of force which results in injuries found to be *de minimis* does not constitute excessive force under the Fourteenth Amendment.  *Riley v. Dorton*, 115 F.3d at 1167-68; *see also Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181, 119 S.Ct. 1121, 143 L.Ed.2d 115 (1999).

Defendants admit that a "use of force" incident occurred on December 17, 2003 between Mercer and Plaintiff.  According to Defendants, Officers Mercer and Atkins were conducting a head count as part of their regular duties.  Reports completed by SCDF personnel shortly after the incident state that as Plaintiff re-entered the building for a head count, he was cursing loudly and creating a disturbance.  Officer Mercer told Plaintiff to stop his behavior and return immediately to his room.  Plaintiff yelled, "I want you," picked up a chair, slammed it against a table several times, and advanced toward Mercer while wielding the chair.  Mercer struck Plaintiff with his closed left fist; Plaintiff fell down and started kicking and striking out against Mercer, who attempted to subdue Plaintiff, and struck him in the right side of the face.  Officer Atkins came to assist; the two held plaintiff down on the floor until Capt. Freeman, Lt. Pilgrim, Stg. Hayes and Officer Murray responded to the Pod to assist in handcuffing Plaintiff, who stopped fighting when backup officers arrived.[24]  According to SCDF Director Larry Powers, Officer Mercer was correctly following procedure in his response to Plaintiff's failure to follow a direct order and apparent intent to physically attack Officer Mercer, and used force that was appropriate under the circumstances and jail policy.[25]

After Plaintiff was under control, he was taken to the SCDF infirmary and then transported to the Spartanburg Regional Medical Center Emergency Department, where he was treated by Dr.

---

[24]     *See* SCDF Incident Report completed by Mercer dated December 17, 2003 [26-5] at ¶ 5-6.

[25]     *See* Affidavit of Larry Powers [26-3] at ¶ 7 and Exhibit "B" thereto, and ¶ 9.

Paul Fraley.  Dr. Farley noted soft tissue swelling, bloody fluid in the maxillary sinus, a fractured nose, a right elbow contusion, and a left pectoralis contusion.  Plaintiff was discharged that same evening with instructions for a follow-up visit with Dr. Fred Butehorn of Spartanburg Ear, Nose, and Throat, Head & Neck Surgery to be scheduled by the SCDF officials so Plaintiff's fractured nose, swelling, and cuts, could be further assessed.  SCDF made an appointment for Plaintiff to be seen by Dr. Butehorn on December 22, 2003.  Dr. Butehorn performed an examination and CT scan, and found only soft tissue injuries and a nasal fracture with minimal displacement.  He recommended no further treatment, and advised follow up "as needed".  Plaintiff never requested any further medical treatment.[26]

Based upon these facts, Plaintiff has failed to produce sufficient evidence from which a jury could conclude that Mercer employed at least some force against him in a malicious or sadistic manner, and that the injuries resulting from such force were more than *de minimis*.  This court does not find that Plaintiff has alleged that "the force used [is] of a sort repugnant to the conscience of mankind . . . or [that] the pain itself was such that it can properly be said to constitute more than *de minimis* injury," *Taylor*, 155 F.3d at 483 (internal quotation marks omitted), and there is no evidence to support such a claim.  It is recommended that Plaintiff's claim of excessive force be dismissed.

### D.  Due Process and Equal Protection Claims[27]

Plaintiff alleges he was kept in solitary confinement for eight months.  Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause rather than under the Eighth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Cooper v. Dyke*, 814 F.2d 941

---

[26]     Plaintiff was admitted to the South Carolina Department of Corrections on November 4, 2004, to serve a 20 year sentence including the offense of strong arm robbery.  *See* Affidavit of Larry Powers [26-3] at ¶ 8 and Exhibits "C", "D", and "E" thereto.

[27]     *See* Second Amendment to Complaint [7-2] at p. 3, (C) (alleging denial of due process and equal protection of law by state official acting under of color of state law while Plaintiff was in solitary confinement at the detention center).

(4th Cir. 1987).  Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt.  *Hill v. Nicodemus*, 979 F.2d 987 (4th Cir. 1992).  Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense.  *Id.* at 991, *citing Bell v. Wolfish*, 441 U.S. at 535.  For the punishment, *i.e.*, the alleged unconstitutional condition of confinement, to be sufficiently serious, it must fail to meet the minimal civilized measure of life's necessities.  *See Rhodes v. Chapman*, 452 U.S. 337, 341 (1981).  Absent a showing of expressed intent to punish on the part of the correctional officials, the determination of whether a particular action is punitive turns on whether it was rationally connected to legitimate non-punitive governmental objectives and whether it is excessive in relation to that purpose.  *Bell*, 441 U.S. at 538-540; *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).  Prison officials are afforded deference in determining what is reasonably related to a legitimate government objective.  Indeed, plaintiffs bear the burden of producing, even at the summary judgment stage, "specific non-conclusory factual allegations" of an improper motive.  *Crawford-El v. Britton*, 523 U.S. 574 (1998).

As demonstrated by the SCDF policies, "administrative segregation" is used to protect an inmate's safety, to protect other inmates from a particular inmate, to break up potentially disruptive groups of inmates, or simply to await later classification or transfer.  Accordingly, administrative segregation is the sort of confinement that an inmate should reasonably anticipate receiving at some point in their incarceration.  Plaintiff has a documented history at SCDF of aggressive behavior towards others.  The evidence of record indicates that Plaintiff had a history of arrests and disciplinary infractions at the SCDF, which suggest that Plaintiff's temperament was known by SCDF personnel.  The Defendants have produced SCDF records indicating that Plaintiff was admitted to the facility on September 8, 2002 following his extradition from California on

charges of assault and battery with intent to kill.[28]  Plaintiff's prior arrest and internal SCDF

disciplinary record included: (1) May 27, 1997 admission to SCDF on Fugitive from Justice

Warrant for violation of probation; (2) February 3, 1999 admission to SCDF on charge of Armed

Robbery; (3) November 11, 2002 (fighting with another inmate, 10 days disciplinary detention);

(4) December 31, 2002 (disturbing housing unit and refusing a direct order); (5) January 27, 2003

(starting a fight with another inmate); (6) February 19, 2003 (possession of cigarette); (7) June 24,

2003 (dispute with cell mate); (8) September 25, 2003 (verbal and physical altercation with former

cell mate, found not guilty).[29]  After the September 25, 2003 incident, Plaintiff was moved from

POD 5 (disciplinary separation) to POD 3, where he was administratively separated and allowed

out on rotation separate from the general population inmates based on his history of aggressive

behavior.[30]

       There is no evidence before the court to support the notion that Plaintiff was being

punished when he was placed in administrative separation.  Instead, Plaintiff was placed there at

Director Larry Power's discretion.  Inmates in administrative separation have limited privileges.[31]

However, their ability to correspond by mail is not impeded, and they also have certain other

rotation privileges and phone privileges, as are more fully set forth in the policies governing this

type of confinement.[32]  Significantly, it appears that Plaintiff's own behavior resulted in the

administrative separation of which he complains.  Jail officials exercised the broad discretion

afforded to them to house Plaintiff on administrative separation status for an extended period of

---

[28]    Affidavit of Larry Powers [26-3] at ¶ 3, and Exhibit "A" thereto.

[29]    *See* Affidavit of Larry Powers [26-3] at ¶¶ 3-4; Affidavit of Heard Mercer [26-12] at ¶ 5 and Exhibit "A" thereto.

[30]    *See* Affidavit of Larry Powers [26-3] at ¶ 4.

[31]    Defendants contend that Plaintiff was not subjected to disciplinary proceedings for the December 17, 2003 incident.

[32]    *See* Policies attached to [26-2] as Exhibit A.

time in order to protect Plaintiff as well as other inmates, and to ensure order and safety at SCDF. This type of confinement does not implicate any due process rights, and Defendants are entitled to summary judgment on this claim.

### E.  Discrimination on the Basis of Plaintiff's Asian Ethnicity

Plaintiff contends that Cpl. Mercer's assault was the result of discrimination against him on the basis of his ethnicity, national origin, and inability to read, write or comprehend English.[33] He also alleges that in the past, Mercer had "made fun" of Plaintiff because of his foreign descent and language.

The verbal harassment of the sort alleged Plaintiff is insufficient to state a constitutional deprivation.  *See*, *e.g., Collins v. Cundy*, 603 F.2d 825 (10th Cir.1979) (allegations that sheriff laughed at prisoner and threatened to hang him held insufficient).  Finally, there is no evidence, that Plaintiff's Laotian heritage prompted the dispute in the common area on December 17, 2003.

### F.  Access to the Courts

The United States Constitution guarantees prisoners the right of meaningful access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 824, 828 (1977).  In *Lewis v. Casey*, 518 U.S. 343, 349-52 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation.  In *Cruz v. Hauck*, 515 F.2d 322 (5th Cir. 1975), the court noted that "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate devise of the State."  *Id*. at 331.

Platiniff contends that he was cut off from his attorney and thus could not get assistance in his criminal case.  However, the record demonstrates that was tried on the charges with representation of counsel, and is now serving a sentence in the South Carolina Department of Corrections system.  There is no evidence that Paltiniff has challenged that sentence in any way for any alleged failure of SCDF personnel to allow him to correspond with his attorney.

---

[33]      *See* Second Amendment to Complaint [7-2] at p. 4(D).

Furthermore, the Plaintiff has presented no evidence, except for his allegations, which shows that the Defendants' conduct in any way impeded his access to the courts. Conclusory allegations, without more, are insufficient to preclude the granting of the Defendants' motion for summary judgment. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). Based upon the foregoing, the claim fails.

### G. Claims Pursuant to the South Carolina Tort Claims Act

The South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, et seq., which governs tort actions against governmental entities, must be must be liberally construed in favor of the governmental defendant. *Faile v. South Carolina Dep't of Juvenile Justice*, 350 S.C. 315, 566 S.E.2d 536 (2000). S.C. Code § 15-78-60 (5) provides for immunity from liability for losses resulting from the exercise of discretion or judgment by a governmental entity or employee. Courts have held that this limitation must be read in light of S.C. Code § 15-78-60(25), which provides an exception to immunity where the governmental entity exercises its responsibility or duty in a grossly negligent manner. If discretion is exercised in a grossly negligent manner, the exception to the normal rule of immunity applies. *Jackson v. South Carolina Dep't of Corrections*, 301 S.C. 125, 390 S.E.2d 467 (Ct. App. 1989). Thus, the Plaintiff must meet the gross negligence standard in order to prevail on a claim under the Tort Claims Act. A defendant is guilty of gross negligence if he is so indifferent to the consequences of his conduct as not to give slight care to what he is doing. Gross negligence involves a conscious failure to exercise due care. *Jackson v. South Carolina Dep't of Corrections*, 301 S.C. 125, 390 S.E.2d 467 (Ct. App. 1989).

The court must construe Plaintiff's pro se pleading in the most liberal fashion. Even were this court to assume that Plaintiff is alleging that Cpl. Mercer was in a position for which he was not qualified, the evidence does not support such an allegation. The record before the court indicates that Cpl. Mercer had been trained at the South Carolina Criminal Justice Academy, received ongoing on the job training, and had approximately nine (9) years of experience in the employ of the SCDF at the time of the incident. There is no evidence in the record that Cpl.

Mercer was in any way unqualified to deal with the situation involving Plaintiff. Contrary to Plaintiff's allegations, the record reflects that Cpl. Mercer responded to his attack according to SCDF policy and procedure. According to the Defendants, no charges were brought by the Solicitor's office, which independently evaluated the incident.

### H. Plaintiff's Claim Against Spartanburg County

Under 42 U.S.C. § 1983, counties, like other local government entities, can be sued for violations of constitutional rights. *See Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n. 12, 106 S.Ct. 1292, 1300 n. 12, 89 L.Ed.2d 452 (1986). The violation, however, must bear some relation to the county's "policy or custom." *Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2035-36; *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 n. 1, 108 S.Ct. 915, 924 n. 1, 99 L.Ed.2d 107 (1988).

In the present case, because it cannot be said that Plaintiff's constitutional rights were violated, Spartanburg County's policies regarding the SCDF are not implicated. This defendant should be entitled to summary judgment.

### I. Plaintiff's Claim against the Spartanburg County Sheriff

Plaintiff alleges liability against the Spartanburg County Sheriff for "allowing acts of cruel and usual punishment against the Plaintiff by a junior officer" and "the grossly negligent acts of the jail staff"[.][34]

In South Carolina, a county Sheriff and the Sheriff's Department are entitled to Eleventh Amendment protection. *See, e.g., Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) ("[I]n his capacity as a state official, Sheriff Brown is immune from suit under § 1983 for money damages."); *McCall v. Williams*, 52 F.Supp.2d 611, 623 (D.S.C. 1999) ("[T]he Sheriff's Department, like the sheriff, is an arm of the state and entitled to Eleventh Amendment

---

[34]     *See* Second Amendment to Complaint [7-2] at p. 2 (B).

immunity."); *Gulledge v. Smart*, 691 F.Supp. 947, 954 (D.S.C. 1988), *aff'd*, 878 F.2d 379 (4th Cir. 1989); *Cone v. Nettles*, 417 S.E.2d 523, 524-25 (S.C. 1992). [35]  Based upon the reasoning of these cases, the court recommends that all claims against defendant Spartanburg County Sheriff be dismissed.

### J.  Plaintiff's Claim against the Spartanburg County Detention Center

Plaintiff also has asserted a claim against the "Spartanburg County Jail" which is also known as the Spartanburg County Detention Center.  To state a claim under Section 1983, the plaintiff must sufficiently allege that he was injured by a "person" acting under the color of state law.  *See* 42 U.S.C. § 1983.  Inanimate objects such as buildings, facilities, and grounds are not "persons" under Section 1983.  *See Allison v. California Adult Authority.*, 419 F.2d 822, 823 (9th Cir. 1969) (the California Adult Authority and San Quentin Prison are not "persons" subject to suit under Section 1983 ); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D.Va. 1999) (the Piedmont Regional Jail is not a "person" and is not subject to suit under Section 1983 ); *McCoy v. Chesapeake Correctional Center*, 788 F.Supp. 890 (E.D.Va. 1992) ("the jail itself is not an individual, a corporation, a partnership, or an unincorporated association . . . it lacks capacity to be sued as a jail,");  *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294 (E.D.N.C.1989) (holding claims under Section 1983 are directed at "persons" and a jail is not a person).  The Defendant Spartanburg County Jail is a group of buildings, or a facility.  It is not a person subject to suit under Section 1983 and it is recommended that it be dismissed as a defendant.

---

[35]     In *Gulledge*, the court concluded that South Carolina sheriffs are state officials and not persons for purposes of Section 1983, based upon the following facts: (1) the South Carolina Constitution established the sheriff's office and provided that the General Assembly determines a sheriff's powers and duties;  (2) state law sets forth a sheriff's duties and compensation;  (3) a sheriff's arrest power relates primarily to state offenses; and (4)  the Governor is empowered to fill vacancies or remove a sheriff for misconduct. 691 F.Supp. at 954; *see also Brisbane v. Beaufort County Sheriff's Dept.*, 2006 WL 279024, at *4 (D.S.C. Feb. 2, 2006) (setting forth the same facts).

**K.  Qualified Immunity**

The remaining defendant, Mercer, would be entitled to qualified immunity in this case. However, because there is no evidence that Mercer violated any constitutional rights of the Plaintiff, it is unnecessary to address this issue.  *See Young v. City of Mount Rainier*, 238 F.2d 567, 577-578 (4th Cir. 2001) (where court concluded that the complaint did not allege a constitutional violation, there was no need to consider the question of qualified immunity).

**RECOMMENDATION**

Based upon the foregoing, the undersigned recommends that **Defendants' Motion for Summary Judgment [26-1] be granted.**

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

November 30, 2006
Charleston, South Carolina

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**& The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and
Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of its
service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period
excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed.
R. Civ. P. 6.  Based thereon, this Report and Recommendation, any objections thereto, and the
case file will be **delivered to a United States District Judge** fourteen (14) days after this Report
and Recommendation is filed.  Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142
F.R.D. 91, 94 & n. 3, (S.D.N.Y. 1992).  A magistrate judge makes only a recommendation, and
the authority to make a final determination in this case rests with the United States District Judge.
*See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp.
408, 410 (D.S.C. 1993).

During the period for filing objections, but not thereafter, a party must file with the Clerk
of Court specific, written objections to the Report and Recommendation, if he or she wishes the
United States District Judge to consider any objections.  **Any written objections must**
***specifically identify*** **the portions of the Report and Recommendation to which objections are**
**made *and* the basis for such objections.**  *See* Keeler v. Pea, 782 F. Supp. 42, 43-44 (D.S.C.
1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, (D.Utah 1995).  Failure to
file specific, written objections shall constitute a waiver of a party's right to further judicial
review, including appellate review, if the recommendation is accepted by the United States
District Judge.  *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.) 1984, *cert. denied*,
Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 &
nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate
judge's Report and Recommendation, but does not file specific objections to other portions of the
Report and Recommendation, that party waives appellate review of the portions of the magistrate
judge's Report and Recommendation to which he or she did not object.  In other words, a party's

failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991).  *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir. 1985)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  * * *  This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  * * *  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review.  * * *  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review").

    **This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections.**  *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**
